# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
| ) | |
| Plaintiff,    ) | |
| )     | 2:11-cr-0110-RLH-LRL |
| v.                                                 ) | |
| ) | **ORDER** |
| DE RONG SHANG, *et al.*,                ) | |
| ) | |
| Defendants.    ) | |
| _____) | |

Before the court is defendants De Rong Shang and Yuli Eaton's Motion to Sever Trial of Defendants. (#31). The government filed an Opposition (#36), and defendants filed a Reply (#39).

**Motion To Sever Trial**

The defendants are awaiting trial on charges of mail fraud (18 U.S.C. § 1341), conspiracy to commit mail fraud (18 U.S.C. § 1349), and aiding and abetting (18 U.S.C. §2). They seek an order severing their trials on the ground that the defendants have "mutually exclusive defenses" that could substantially prejudice either defendant. Additionally, they contend that "should Ms. Eaton exercise her right not to testify, the government may introduce inculpatory statements or purported statements made by her which may be prejudicial to Mr. Shang and deny his confrontation rights guaranteed by the United States Constitution." *Bruton v United States,* 391 U.S. 123 (1968).

Rule 8(b) of the Federal Rules of Criminal Procedure provides that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." In the federal system there is a preference for joint trials of defendants who are indicted together. *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Even when proper under Rule 8(b), however, joinder may be

prejudicial. Rule 14(a) provides that if the joinder of defendants "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

### A.     Mutually Exclusive Defenses

The presence of mutually exclusive defenses "can have a prejudicial effect upon the jury, and hence the defendants, in a number of ways;" such as when the defendant's "'opportunity to present an individual defense' is violated." *United States v. Tootick,* 952 F.2d 1078, 1082 (9th Cir. 1991) (quoting *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980)). Therefore, the finding of antagonistic defenses provides the court with grounds to sever the trial of codefendants. *Tootick,* 952 F.2d 1078. However, "mere inconsistency in defense positions is insufficient to find codefendants' defenses are antagonistic" or mutually exclusive. *Id.* It is when the "acquittal of one codefendant would necessarily call for the conviction of the other," that the court will sever the trials on this basis. *Id.* (citing *United States v. Adler*, 879 F.2d 491, 497 (9th Cir. 1988)).

Here, the defendants assert that their defenses are "mutually exclusive." The only support they offer for this assertion is that Ms. Eaton's pre-indictment interview contains "accusations against Mr. Shang and allegations that foreshadow use of the good faith defense to the principal charge." (#31-1). The government argues that the "record is at present insufficient to support" a finding that the parties would be prejudiced by a joint trial due to mutually exclusive defenses. The court agrees. That Ms. Eaton points a finger of guilt at Mr. Shang hardly constitutes evidence of mutually exclusive defenses. The court has not been presented with Mr. Shang's defense, and therefore is unable to assess whether the defenses are in fact "mutually exclusive." Absent a specific factual basis for the belief that a serious risk exists that a joint trial would compromise the defendants' right to a fair trial due to mutually

exclusive defenses, there is no justification for severing the defendants' trials. *Zafiro*, 506 U.S. 534, 539.

### B.     Ms. Eaton's Pre-Indictment Interview

The defendants further contend that separate trials are necessary because Ms. Eaton's pre-indictment interview contains "inculpatory statements...which may be prejudicial to Mr. Shang and deny his confrontation rights guaranteed by the United States Constitution." (#31). The defendants assert that if the government is permitted to introduce the statements made during the interview at trial, it would be in violation of *Bruton v United States,* 391 U.S. 123 (1968) and *Gray v. Maryland,* 523 U.S. 185 (1998). Specifically, they argue that neither providing the jury with limiting instructions nor redacting the pre-indictment interview would protect Shang's Constitutional rights.

### 1. Limiting Instructions

In *Bruton,* co-defendants Bruton and Evans were jointly tried for armed postal robbery. During the trial, the government called to the stand a postal inspector who testified that Evans had confessed to the robbery. *Id* at 124. In his confession, Evans admitted that he committed the crime with his accomplice, Bruton. *Id.* However, as Evans did not take the stand, Bruton was unable to cross-examine him regarding his alleged involvement. *Id.* At the close of the government's case, the court gave "clear, concise and understandable" instructions that Evans' confession could only be used against him, and must be disregarded with respect to Bruton. *Id.* The jury found both of the defendants guilty of federal armed postal robbery. *Id.* Bruton appealed his conviction, asserting that the instructions did not sufficiently protect his constitutional right to a fair trial. *Id.*

On appeal, the court reversed Bruton's conviction, and held that "because of the substantial risk that the jury, despite instruction to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton]'s guilt, admissions of Evans' confession in this joint trial violated [Bruton]'s right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id* at 126. The court held that when the confession of a defendant implicates his co-defendant, it is impossible to expect a jury to "perform the overwhelming task" of "segregat[ing] evidence into separate intellectual boxes."

*Id.* The court rejected the contention that limiting instructions would serve as "an adequate substitution for [defendant's] constitutional right[s]" in joint trials of this nature. *Id* at 137. Thus, the court held that it would have been proper to sever the trial. *Id.* (holding that the purpose of Rule 14 was to "provide a procedure whereby the issue of possible prejudice can be resolved on the motion for severance.").

Here, FBI Special Agent Mike Kung interviewed Ms. Eaton and documented the interview in a FD-302 report dated January 26, 2010. (#47). According to the report, defendant Eaton referred to her co-defendant Shang several times by name, and, most importantly, contended that Shang was the leader of the alleged conspiracy. *Id.* Based on *Bruton*, defendant Shang argues that in a joint trial, where the government introduces the FD-302 as evidence but Eaton does not take the stand, limiting jury instructions would not adequately protect his Constitutional rights. (#31). This court agrees. During the pre-indictment interview, Ms. Eaton not only implicated herself in the alleged conspiracy, but she went into detail as to how Mr. Shang allegedly coordinated the entire scheme and lured her into it. (#47). Essentially, according to her statements, absent Mr. Shang's supposed role, she would not have engaged in any illegal activity: the two parties are interwoven. Therefore, even with clear limiting instructions, there is no way to expect the jury to "segregate evidence into separate intellectual boxes" and to not consider Ms. Eaton's statements as evidence against Shang. *Bruton,* 391 U.S. at 126.

**2. Redacted FD-302**

Based on the court's conclusion above, on August 30, 2011, the court ordered the government to submit a proposed redacted version of the FD-302 report "that alleviates the alleged *Bruton* and *Gray* issues." (#46). On September 8, 2011, the government provided the court with a redacted version of the interview, whereby it blacked out defendant Shang's name, both first and last, and the word "his." *Id.* After reviewing the government's proposed redacted version (#50), the court finds that, as in *Gray,* the redacted interview does not sufficiently ensure that defendant Shang's constitutional rights are not violated. *Gray v. Maryland,* 523 U.S. 185 (1998).

In *Gray,* the court denied the defendant's motion to sever trial, and jointly tried defendants Gray and Bell for the murder of Stacey Williams. *Id.* At trial, the court permitted the government to

1  introduce Bell's *redacted* confession into evidence. *Id* at 188. The confession named Bruton and "a
2  few other guys" as participating in the beating that lead to Williams' murder. *Id.* When the confession
3  was read into the record by a police detective, the word 'deleted' or 'deletion' was said whenever Bell
4  mentioned Gray's name. *Id.* Further, the state introduced into evidence a written copy of the confession
5  with his name omitted, leaving blank white spaces in its place. *Id.* Additionally, after reading the
6  confession, the detective testified that he arrested Gray shortly after Bell confessed. *Id.* Gray testified
7  and denied his involvement, but Bell did not take the stand. *Id.* Before deliberation, the court provided
8  the jury with limiting instructions regarding the use of Bell's confession, but both Bell and Gray were
9  convicted of murder. *Id.* On appeal, the court held that "[r]edactions that simply replace a name with
10 an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indications
11 of alteration...leave statements that, considered as a class, so closely resemble *Bruton's* unredacted
12 statements that, in our view, the law must require the same result." *Id* at 192. Therefore, the court
13 vacated the judgment of the lower court and remanded. *Id* at 197.

14       In the case before this court, the government's proposed redacted interview does nothing more
15 than the redacted confession in *Gray.* The government simply placed black lines through defendant
16 Shang's name and the word "his," and indicated that ""a person" or "this person" will replace redacted
17 provisions." (#50). This is insufficient under *Gray*, as it "refers directly to the "existence" of the non-
18 confessing defendant," and the jury could easily "realize that the confession refers specifically
19 to...defendant" Shang*:* "[a] juror...who wonders to whom the blank might refer need only lift his eyes
20 to [the co-defendant], sitting at counsel table, to find what will seem the obvious answer..." *Gray*, 523
21 U.S. at 192-193. First, as discussed briefly above, during Ms. Eaton's interview, she provided the agent
22 with a detailed description of Shang's role and how he carried out the alleged conspiracy. (#47). These
23 allegations mirror those asserted in the indictment against Shang that will be provided to the jury. (#1).
24 Replacing his name with "a person" does not prevent the jury from making the connection between the
25 two and realizing that Ms. Eaton's statements "refer[] specifically to...defendant" Shang. *Gray,* 523
26 U.S. at 193. Second, the conclusion could be reasonably drawn that "the person" was Shang, a Chinese

5

male, because the government left in the words "him" and "he," and the sentences indicating that the "person" was from Shanghai, China, spoke Chinese, and had a "girlfriend, Li-Li, aka LongMei Fang." (#50).  Thus, inasmuch as the government's proposed redacted FD-302 is equivalent to "Evans' use of Bruton's name or to a [non-]testifying co-defendant's accusatory finger," there is a "serious risk that a joint trial would compromise" Shang's right to a fair trial.  *Gray,* 523 U.S. at 194; *Zafiro*, 506 U.S. 539; *see also* Fed. R. Crim. P. 14(a).  Therefore, severance in this case is warranted.  *Id.*

Accordingly, and for good cause shown,

IT IS ORDERED that defendants De Rong Shang and Yuli Eaton's Motion to Sever Trial of Defendants (#31) is granted.

DATED this 7th day of October, 2011.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**